IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GREG P. GIVENS, | : | |
| Plaintiff | : | Civil Action 2:09-cv-800 |
| v. | : | Judge Frost |
| OMAN & EMIRATES INVESTMENT HOLDING CO., *et al.*, | : | Magistrate Judge Abel |
| | : | |
| Defendants. | : | |

**REPORT AND RECOMMENDATION**

Plaintiff Greg P. Givens ("Givens") filed this action on September 14, against the United National Bank ("United Bank"), its alleged holding company[1], and several individuals who are its alleged agents. In a previous Report and Recommendation, the Magistrate Judge summarized the factual allegations in this case:

Plaintiff received an automobile loan on December 27, 1999 from

---

[1] Plaintiff alleges in his complaint that the United National Bank is owned by the "Oman & Emirates Investment Holding Company". Compl. ¶23. He refers to the individual defendants, Ruth M. Bennett, Anna M. Bayrdi, Richard M. Adams, Sr., and Richard A. Hayhurst, as "principal agent[s] of OMAN". Compl. at ¶¶23-26. Defendants state in their motion for summary judgment that there does appear to exist a company called the "Oman & Emirates Investment Holding Co.", headquartered in the United Arab Emirates. This company holds a subsidiary called "United Brokerage Company LLC". Defendants suggest that Plaintiff has confused this entity with United Bank's own, unrelated, subsidiary United Brokerage Services, Inc. (Doc. 16 at 11.)

United National Bank ("United Bank"), which does business in Bellaire, Ohio.  It was supposed to be paid off on December 27, 2002. However, after that date, the lender "created conditions of compulsory service" through intimidation and threats of coercion, and did not release the lien upon the automobile. When he complained to authorities about the lender, agents of OMAN threatened his life and attempted to hire someone to kill him. They also harassed him at his workplace. On January 24, 2003, agents of the lender approached Plaintiff in Bellaire and demanded their money, informing him that they had resorted in the past to violence. Plaintiff alleges that he is being subjected to involuntary servitude and fears for his life. In his complaint, he brings claims for violation of his Thirteenth Amendment rights, for conspiracy to deprive him of his constitutional rights, for "unlawful actions regulated under federal law", for intentional infliction of emotional distress, and for a judicial declaration of his rights.

(Doc. 31 at 1-2.)[2]

On March 22, 2010, Defendants filed a motion to have this case subjected to a merit screening pursuant to 28 U.S.C. §1915(e)(2)(B), and to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), and for summary judgment pursuant to Rule 56.  (Doc. 16.) Defendants alleged that under the terms of Given's automobile loan agreement, he was obligated to maintain insurance on the vehicle.  He failed to do so, and United Bank obtained coverage itself and charged the cost to Givens' loan.  Givens

---

[2]  Plaintiff, in his memorandum contra summary judgment, appears to characterize this summary of his complaint as unfair. (Doc. 52 at 6.)  These allegations, however, all appear in his complaint. *See, e.g.,* Compl. at ¶16 ("unholy" loan contract resulted in "involuntary servitude");  ¶10 (Plaintiff placed in "peonage" under threat of force);  ¶18 (Plaintiff "felt... he was no doubt held in a condition of bondage");  ¶6 ("agent[s] of OMAN" attempted to hire a "hit man", made "a 'contract' attempt" upon his life, and put him in a "'master over slave role'").

complained about this to various government and regulatory agencies.[3] On March 9, 2009, Givens wrote to United Bank's counsel, Defendant Hayhurst, demanding the Certificate of Title to his automobile; Hayhurst responded on behalf of United Bank that it would not give him his title until he paid the remaining $494.12 balance on his loan. (Doc. 16-1 at 57.) Later, after Plaintiff filed this lawsuit, Hayhurst wrote him again and offered to release the lien on his vehicle if Plaintiff would dismiss his suit. (*Id.* at 78.)

On April 14, 2010, the Magistrate Judge issued a Report and Recommendation, recommending that Givens' complaint be dismissed because the harm of which he complained was now moot, because his complaint failed to offer a plain statement of his claim showing that is entitled to relief, and because his claims were, in general, so incredible as to be legally frivolous. (Doc. 31 at 5.) On June 17, 2010, the District Judge adopted this Report and Recommendation in part, over Givens' objections. (Doc. 43). The Court agreed that Givens had not stated a claim against any defendant under 42 U.S.C. §1983, because had made only a vague allegation that the defendants were state actors or had a sufficiently close relationship to the state to be considered state actors. However, the Magistrate Judge had found that Givens' allegations that he had been wrongly deprived of his automobile title were now moot because United Bank had sent correspondence to

---

[3] On January 14, 2008, Givens filed suit in the United States District Court for the Northern District of West Virginia against nonparty Main Street Bank and various other defendants, including United Bank. On September 25, 2008, United Bank was dismissed from that suit for failure to state a claim. (Doc. 16 at 6-7.)

3

the Court stating that it had returned the title to Givens. The District Judge, noting that Givens maintained that he had never received notice of discharge of lien, found that the question of the lien discharge was still in dispute. (Doc. 43 at 3-4.) Defendants were granted leave to supplement their motion for summary judgment with evidence that they had discharged the lien. Defendants subsequently did so, filing a copy of what appears on its face to be an Ohio certificate of automobile title to Givens' vehicle, with a discharged lien.[4] (Doc. 51-1.)

**Opposition to dismissal or summary judgment**.

Givens has now filed (Doc. 52) a memorandum in opposition to Defendants' motion to dismiss or for summary judgment.[5] In it, he reiterates his allegations that United Bank and its agents had subjected him to "situations of force-placement and involuntary debt servitude" (*id.* at 3) and that they had generally inflicted emotional distress upon him and damaged his reputation. The majority of his argument is repetitive and conclusory, a mere description of actions for deprivation of constitutional rights and recital that the Defendants are liable for doing so. Givens reiterates his earlier claim that Defendants can be held liable under 42

---

[4] Givens apparently again asserts that he never received his automobile title from Defendants (Doc. 52 at 2), and his uncle states in an affidavit that the signature on the certified mail return receipt card for the title is not his. (Doc. 52-6.) Nevertheless, given the state of the factual record in this case and the nature of Plaintiff's previous claims, the Court cannot reasonably credit these allegations.

[5] Although Givens' July 26, 2010 memorandum contra was filed a considerable time after Defendants' March 22, 2010 motion, the Court will consider it nonetheless, given the permission granted to Defendants to supplement their motion.

4

U.S.C. §§ 1983 or 1985 because they were acting under color of law in conspiring with state actors to violate his civil rights.[6] Givens also attached, to his memorandum, six affidavits: those of Rick Eden, proprietor of Edens Auto Ranch in Bellaire, Ohio; James Boyle, an insurance agent in Saint Clairsville, Ohio; Ricky D. Scott, a customer of Edens Auto Ranch; Plaintiff Givens; Kevin Tomlinson, a neighbor of Givens; and Dennis A. Givens, who is identified in the complaint as Givens' uncle. Eden's affidavit (Doc. 52-1) is nearly incomprehensible, but states generally that United Bank at one point instructed him to repossess the subject vehicle. Boyle's affidavit (Doc. 52-2) states that "[a]t one time" his agency had obtained an insurance policy for the subject vehicle, and that Givens had maintained insurance coverage from December 1999 through July 2003. Scott's affidavit (Doc. 52-3) states that on fifty occasions in 2006 an agent of United Bank had physically threatened him or attempted to place "hits" on his life. Plaintiff's affidavit (Doc. 52-4) states that he had frequently paid "extortion money" to an agent of United Bank following the last payment on his auto loan, and that he had been coerced into paying this money through threats of physical harm. Tomlison's affidavit (Doc. 52-5) states that he had witnessed agents of United Bank threaten

---

[6] Givens apparently refers to nonparty Mitch Tolson as a state actor. Mr. Tolson is not mentioned in Givens' complaint, but in his memorandum contra Givens identifies him as a "Bank Examiner". (Doc. 52 at 2.) Givens also appears to assert that Mr. Hayhurst is a state actor by virtue of being an attorney. (*Id.* at 6.) However, attorneys are not state actors under color of law merely because they are sometimes said to be "officers of the court". *Polk County v. Dodson*, 454 U.S. 312, 318 (1981).

Plaintiff. Dennis Givens' affidavit (Doc. 52-6) states that he did not sign the certified mail receipt for Plaintiff's automobile title.

Neither Givens' new and lengthy recitals nor his affidavits, however, do anything to disturb the District Judge's earlier conclusions:

> A plaintiff may not proceed under §1983 against a private party if the private party did not act under color of law. *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003). The Sixth Circuit Court of Appeals recognizes three tests for determining whether private conduct is fairly attributable to the state: the public function test, the state compulsion test, and the nexus test. *Moldowan v. City of Warren*, 578 F.3d 351, 399 (6th Cir. 2009). Here, Plaintiff appears to be arguing that the Court should apply the nexus test. *See* Doc. #37 at 6-7. The nexus test "requires a sufficiently close relationship (i.e., through state regulation or contract) between the state and the private actor so that the action taken may be attributed to the state." *Ellison v. Garbarino*, 48 F.3d 192, 195 (6th Cir. 1995).
>
> Plaintiff's allegations in his complaint as to §1983 amount to conclusory statements that the defendants conspired to deprive him of his constitutional rights. (Doc. #4 at 13.) He elaborates on these claims slightly in his objections, apparently claiming that Defendants conspired with state and federal bank regulators to deny him his civil rights (*Id.* at 2) or that Defendants discriminated against him on the basis of race and thereby enforced a state custom of racial segregation (*Id.* at 4). Even were these additional allegations stated in his complaint, however, they would still be so vague as to fail to make a "short and plain statement of the claim showing that the pleader is entitled to relief."

(Doc. 43 at 2-3.) His complaint is a farrago of wild accusations that United Bank and its agents have conspired with bank regulators or other government actors to subject him to their service and extort money from him. To the extent that he alleges, or wishes to allege, that United Bank breached the terms of his loan contract, his allegations fail to state a claim that his constitutional rights have been

violated or that any person acting under color of law violated them.  An allegation that a bank wrongly demanded more money from a borrower than the loan contract required cannot be garbed as a Thirteenth Amendment claim.  Beyond this, he has stated no claim at all.

Givens' complaint also vaguely refers to race discrimination in lending or to abuse of process.  (Doc. 4 at 14-18.)  The complaint, however, likewise fails to contain allegations that would give the defendants fair notice as to the specific nature of these claims or against whom they are pled.  Fed. R. Civ. P. 8(a); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Although Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," it is not true that notice pleading means that a complaint need plead no facts.  Givens' bare description of what he represents is the law of abuse of process does not provide any Defendant a description of what he is supposed to have done.  Rule 8(a) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s] devoid of further factual enhancement.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009), quoting *Twombly*, 550 U.S. at 555, 557 (citations omitted).

**Conclusions**.

For the reasons set forth herein, and those already stated by the District Judge, I **RECOMMEND** that Defendants' motion to dismiss (Doc. 16) be

**GRANTED**, and that all claims in this action not already dismissed be **DISMISSED** pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the party thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgement of the District Court. *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also, Small v. Secretary of Health and Human Services*, 892 F.3d 15, 16 (2d Cir. 1989).

s/Mark R. Abel  
United States Magistrate Judge
